IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| United States of America, | Case No. 1:21cv1616 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| $142,140.00 in U.S. Currency, | MEMORANDUM OPINION & ORDER |
| Defendant | |

Currently pending is Claimant Orville Shaw's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 4.) The United States filed a Brief in Opposition on October 15, 2021. (Doc. No. 6.) Shaw did not file a Reply. For the following reasons, Shaw's Motion to Dismiss (Doc. No. 4) is DENIED.

**I.  Background**

The Complaint in Forfeiture alleges the following facts. On April 29, 2021, Orville Shaw was at Cleveland Hopkins International Airport (hereinafter "Hopkins") for a flight to Dallas, Texas. (Doc. No. 1.) He presented two carry-on bags and a checked-in suitcase to the Transportation Security Administration ("TSA") for screening after checking in for his flight. (*Id*. at ¶ 7.) During the screening, Shaw's bags alerted for the presence of a bulk mass. (*Id*. at ¶ 8.) TSA officers examined Shaw's luggage and discovered a large amount of U.S. currency concealed therein. (*Id*. at ¶ 9.) The United States alleges that the currency seized was in the amount of $142,140.00 and was rubber-banded together in multiple denominations of twenty, fifty, and hundred dollar bills. (*Id*. at ¶¶ 4, 9.) The currency in Shaw's checked suitcase was "secreted in the interior lining of the suitcase." (*Id*. at ¶ 9.)

TSA officers notified Cleveland Police Department ("CPD") officers, who, in turn, notified Homeland Security Investigations ("HSI") agents. (*Id.* at ¶ 10.) HSI agents located Shaw at the departure gate for his flight, asked him for identification, and inquired about his checked-in suitcase. (*Id.* at ¶ 11.) HSI agents then escorted Shaw to the HSI office inside Hopkins for further questioning. (*Id.* at ¶ 12.) During questioning, Shaw admitted that the currency found in his suitcase belonged to him and asked to speak with an attorney. (*Id.*) The agents advised Shaw that he was not under arrest and was free to leave at any time. (*Id.*)

Meanwhile, a certified CPD canine officer and his canine "Finnegan" conducted a controlled test at the airport, during which Finnegan alerted on the currency found in Shaw's suitcase for the presence of narcotics. (*Id.* at ¶ 13.) During the search of Shaw's bags, agents seized a total of five (5) cell phones, two of which were "burner" phones. (*Id.* at ¶ 14.) One of the cell phones contained the following text messages sent by the user on the following dates and times:

a. March 23, 2021, at 10:43 p.m.: "20 bal.";

b. March 31, 2021, at 11:50 p.m.: "1 app@ 34.5.";[1]

c. March 31, 2021, at 11:53 p.m.: "62.5 to close out kitchen."; and

d. April 6, 2021, at 2:07 a.m.: "62.5 – 7 = 55.5 – 25 = 30 bal."

(*Id.*)[2] In addition, information extracted from the cell phones indicated that the user had "multiple contacts with individuals known to law enforcement to have multiple felony convictions." (*Id.* at ¶ 15.) Furthermore, one of the five cell phones seized contained photographs of "what appears to be

---

[1] The Complaint alleges that "at the time this text message was sent, $34,500 was the average price for a kilogram quantity of cocaine in the Northern District of Ohio." (*Id.* at fn 2.)

[2] It is not clear from the Complaint whether Shaw consented to the search of the contents of the cell phones or whether the agents obtained a warrant before searching the phones.

2

large marijuana plants growing outdoors and photographs of deceased men on the ground outdoors with one appearing to be dead on the ground next to an assault rifle." (*Id*. at ¶ 16.)

On August 19, 2021,[3] the United States filed a Complaint in Forfeiture over $142,140.00 in U.S. Currency seized from Shaw's suitcases.[4] (Doc. No. 1.) Therein, the United States alleges that the Currency is subject to forfeiture under 21 U.S.C. Section 881(a)(6) because it constitutes proceeds from illegal drug trafficking activities, and/or was used – or was intended to be used – in exchange for illegal controlled substances, and/or was used – or was intended to be used – to facilitate illegal drug trafficking activities. (*Id*. at ¶¶ 6, 17.)

On that same date, the United States sent a Notice of Potential Claim to Shaw pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. (Doc. No. 1-5.) Shaw filed a Verified Claim on September 22, 2021.[5] (Doc. No. 3.)

On October 12, 2021, Shaw filed a Motion to Dismiss the Complaint in Forfeiture pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 4.) He also filed an Answer. (Doc. No. 5.) On October 15, 2021, the United States filed a Brief in Opposition to Shaw's Motion to Dismiss. (Doc. No. 6.) Shaw did not file a Reply.

---

[3] Several months prior, on July 1, 2021, Shaw commenced an action in this Court seeking the Return of Illegally Seized Property pursuant to Fed. R. Crim. P. 41(g). *See Shaw v. United States Department of Homeland Security*, Case No. 1:21cv1272 (N.D. Ohio) (Barker, J.) Therein, Shaw seeks the return of (1) $162,000.00 in U.S. Currency; (2) four cellular devices; (3) one laptop; and (4) various financial documents. (*Id*.) The United States has filed a Motion to Dismiss that action, which remains pending and will be addressed in a separate Memorandum Opinion & Order.

[4] According to pleadings filed in Shaw's Rule 41(g) action, the United States returned Shaw's cell phones and documents in September 2021. *See* Case No. 1:21cv1272 (Doc. Nos. 7, 8.)

[5] In his Verified Claim, Shaw states that $162,000.00 was seized by HSI agents -- not the $142,140.00 that is the subject of the instant forfeiture action. (Doc. No. 3-1.) Shaw further asserts that "the officers lacked probable cause to seize my money and did violate my constitutional rights in so doing. The officers likewise lacked any basis for a belief that these items were 'evidence of a crime or contraband' when the seizure occurred.' . . . These seizures further occurred in the wake of my unlawful arrest and interrogation in the Cleveland Hopkins International Airport." (*Id*.)

**II.     Legal Standard**

At the pleading stage, civil forfeiture actions are governed jointly by the Federal Rules of Civil Procedure, 18 U.S.C. § 983, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). *See United States v. Real Prop. Located at 6001 N. Ocean Drive*, 2015 WL 5209637 at *1 (E.D. Mich. Sep. 4, 2015) (citing 18 U.S.C. § 983(a)(3)(A)). "While the supplemental rules govern, the [Federal Rules of Civil Procedure] may help to clarify any ambiguity." *6001 N. Ocean Drive,* 2015 WL 5209637 at *1 (quoting *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 13 (S.D.N.Y. 2013) (internal quotation marks omitted)).

A motion to dismiss for failure to state a claim in a civil forfeiture proceeding is evaluated under 18 U.S.C. § 983 and Rule G of the Supplemental Rules. *See United States v. $506,069.09 Seized from First Merit Bank*, 664 Fed. Appx 422, 433 (6th Cir. 2016). *See also United States v. $284,942.00*, 2020 WL 5314633 at * 3 (S.D. Ohio Sept. 4, 2020). Specifically, Supplemental Rule G(8)(b)(ii) and 18 U.S.C. § 983(a)(3)(D) explain that a "complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." *Id.* Rather, "[t]he sufficiency of the complaint is governed by Rule G(2)." Supplemental Rule G(8)(b)(ii). Rule G(2), in turn, establishes the requirements for an adequate civil forfeiture complaint, the last of which provides that "[t]he complaint must ... state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." [6] Supplemental Rule G(2)(f).

---

[6] Since the Civil Asset Forfeiture Reform Act's ("CAFRA") enactment in 2000, the government's burden of proof has been to establish, by a preponderance of the evidence, that the property at issue is subject to forfeiture. 18 U.S.C. § 983(c)(1). *See United States v. $82,300 in U.S. Currency,* 2019 WL 1112390 at * 4 (E.D. Mich. March 11, 2019). Additionally, the Sixth Circuit has held that where, as here, the government seeks forfeiture of illegal drug activity under 21 U.S.C. § 881(a)(6), it must show a "'substantial connection' between the property to be forfeited and illegal drug-

4

Interpreting these Rules, the Sixth Circuit has held that "'the Government is not required to allege in the complaint all of the facts and evidence at its disposal.'" *$506,069.09*, 664 Fed. Appx. at 434 (quoting *United States v. $22,173.00 in United States Currency*, 716 F.Supp.2d 245, 248 (S.D.N.Y. 2010)). Rather, "[i]t is sufficient for the Government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation.'" *Id.* See also *United States v. Real Property,* 2021 WL 144245 at * 2 (E.D. Ky. Jan. 15, 2021) ("The Rule and forfeiture statute make plain that the Government need not allege every supportive fact, and the Government's substantiating proof may post-date the complaint.").

Explaining further, courts have recently held that "[t]he complaint 'must provide reasonably detailed facts' that, if accepted as true, support a reasonable belief 'that the United States, after the completion of the discovery process,' could demonstrate by a preponderance of the evidence that the property is tainted and subject to forfeiture." *Real Property,* 2021 WL 144245 at * 2 (quoting *United States v. 12 Parcels of Real Prop. Located in Carlisle, Nicholas Cty., Kentucky*, 2017 WL 4369485, at *2 (E.D. Ky. Oct. 2, 2017)). See also *$82,300*, 2019 WL 11112390 at * 5 (finding that "the government here must plead facts sufficient to establish by a preponderance of the evidence that the $82,300 DEA agents seized from Eddington at the Detroit airport was properly subject to forfeiture and had a 'substantial connection' to unauthorized drug sale or purchase."); *United States v. $335,260.00 in U.S. Currency*, 2010 WL 1416919 at * 2 (N.D. Ohio April 6, 2010). "The United States does not have to establish probable cause at the time it files its complaint because to survive a motion to dismiss, it need only satisfy the 'reasonable belief" standard of Rule G(2)(f)." *12 Parcels*

---

trafficking activity." *United States v. Real Prop. 10338 Marcy Road Northwest, Canal Winchester, Ohio*, 659 Fed. Appx 212, 216 (6th Cir. 2016)

5

*of Real Property*, 2017 WL 4369485 at * 2 (citing *United States v. $16,757.00 in U.S. Currency*, 2010 WL 5662092 at *3 (N.D. Ohio Dec. 22, 2010)). Indeed, the pleading requirement of Rule G does not demand "that the government must ... carry its trial burden at the pleading stage." *Id*. (citing *United States v. Real Prop. Located at 2323 Charms Rd., Milford Twp., Oakland Cty., Mich*., 946 F.2d 437, 441 (6th Cir. 1991)). *See also United States v. 2007 Dodge Ram 1500 Truck*, 2014 WL 4245960 at * 2 (N.D. Ohio Aug. 24, 2014) (noting that "the Supplemental Rules do not require the government to demonstrate probable cause at the pleading stage, a burden that the government must instead carry at trial.")

Finally, under Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations of material fact as true and construe them in the light most favorable to the non-moving party. *See $506,069.09*, 664 Fed. Appx at 433; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). *See also Real Property*, 2021 WL 144245 at * 3; *$284,942.00*, 2020 WL 5314633 at * 3.

**III.   Analysis**

Shaw argues that the Complaint should be dismissed because it "is patently inadequate and unacceptably vague as it fails to disclose any facts tending to show the Currency seized was obtained through drug transactions or, otherwise, why the Government has designated the defendant Currency as drug proceeds." (Doc. No. 4-1 at p. 6.) Noting that the Government has failed to attach any Affidavits from investigators, Shaw asserts that the allegations in the Complaint, standing alone, are insufficient to show that the United States could demonstrate probable cause that the Defendant Currency was tainted at trial. (*Id*.)

In particular, Shaw argues that, while the possession of a large sum of cash "can be strong evidence that the money is linked to drug activity," that is not the case here because Shaw's financial

documentation demonstrates "more than … adequate wealth to justify the amount of money in [his] possession." (*Id*. at pp. 7-8.) Shaw further argues that the fact that Finnegan alerted to the presence of narcotics on the Currency is inconsequential because the DEA's "own chemists have conducted experiments yielding results that confirm currency in general circulation in this country is contaminated with traces of narcotics." (*Id*. at p. 9.) Thus, Shaw maintains that the canine alert does not necessarily link *his* alleged use of the Defendant Currency to controlled substances. (*Id*.) With regard to the allegedly suspicious text messages in the seized cell phones, Shaw argues that these messages are "remote and speculative" and complains that "the Government fails to provide any information whatsoever about why Claimant, a middle-aged man with absolutely no criminal record, would be participating in the purchase of a kilogram of cocaine." (*Id*. at p. 12.) Shaw also asserts that his alleged contact with felons has no probative weight because he is "not subject to any prohibitions limiting with whom he can lawfully interact and freely associate." (*Id*. at p. 13.) Finally, Shaw argues that the Court should not place any weight on the photographs because the Complaint fails to identify who took the pictures, where the pictures came from, or why the presence of the photographs in the phone is an indication of drug trafficking. (*Id*. at p. 15.)

In response, the Government argues that the facts are sufficiently detailed in the Complaint to support a reasonable belief that it will be able to meet its burden of proof at trial by a preponderance of the evidence. (Doc. No. 6.) Specifically, the Government asserts that "in addition to the large sum of cash, the certified canine alerted on the currency for the presence of narcotics, Claimant possessed five (5) cell phones including two (2) burner phones, text messages which could relate to drug activity and photographs of marijuana plants." (*Id*. at pp. 3-4.) Citing a number of analogous cases, the Government argues that the totality of the circumstances sufficiently relates the seized Defendant

7

Currency to drug activity to meet the reasonable belief standard at this stage of the proceedings. (*Id*. at pp. 4-6.)

For the following reasons, the Court finds that the Government's Complaint pleads sufficient allegations to satisfy the requirements of Supplemental Rule G(2). Courts evaluating forfeiture cases look to the "totality of the evidence" in determining whether a complaint has set forth a reasonable belief that the government can prevail at trial. *See United States v. $45,050.00*, 2007 WL 2323307 at * 6 (N.D. Ill. Aug. 9, 2007); *$335,260.00*, 2010 WL 1416919 at * 2. Here, the Complaint alleges numerous facts that, taken together, satisfy the requirements of Supplemental Rule G(2), including the following: (1) TSA screening detected the presence of a bulk mass in Shaw's suitcases, (2) a search of Shaw's luggage revealed over $140,000 in U.S. Currency: (3) the seized Currency was concealed in the interior lining of Shaw's bags and rubber banded together in multiple denominations of twenty, fifty, and hundred dollar bills; (4) a certified canine alerted to the presence of narcotics on the seized Currency; (5) HSI officers found five cell phones, including two burner phones in Shaw's briefcase; (6) the cell phones contained suspicious text messages and multiple contacts with known felons; and (7) one of the phones contained pictures of large marijuana plants. (Doc. No. 1.)

When viewed in the aggregate, the above allegations are sufficient, at the pleading stage and viewed in a light most favorable to the Government, to support a reasonable belief that the United States could establish by a preponderance of the evidence that the currency was properly subject to forfeiture and had a "substantial connection" to illegal drug trafficking activities. The Sixth Circuit has noted that "while the presence of a large amount of cash is insufficient, standing alone, to support forfeiture, 'carrying a large sum of cash is strong evidence of some relationship with illegal drugs.'" *United States v. $99,990.00*, 69 Fed. Appx. 757, 763 (6th Cir. 2003) (finding that the presence of

nearly $100,000 in cash, packaging of currency "in a manner indicative of illegal drug activity," and canine alert to the package containing the currency were sufficient to support forfeiture.) *See also United States v. $118,170.00*, 69 Fed. Appx. 714, 717 (6th Cir. 2003) (noting that "'possession of a large amount of cash is 'strong evidence that the money was furnished or intended to be furnished in return for drugs.'") (quoting *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 981 (9th Cir. 2002)).

Moreover, courts have found that the presence of predominantly small bills and concealment of currency also support an inference that seized currency has a connection to drug activity. *See United States v. $16,000.00*, 2009 WL 1048524 at * 3-4 (N.D. Ohio Apr. 1, 2009) (in denying motion to dismiss, finding that, in addition to a canine alert to the presence of narcotics, "the nature of the [seized] currency, in predominantly small bills, supports an inference that the money came from drug activity."); *United States v. $6,000*, 2012 WL 2357062 at * 3 (S.D. Ohio June 20, 2012) (denying motion to dismiss where government's allegations included finding large sum of cash "bundled and wrapped in rubber bands, stuffed inside a paper bag, and hidden in spare tire well under the floorboard of the trunk"). *See also United States v. Mondragon*, 313 F.3d 862, 866 (4th Cir. 2002) (finding that the packaging of a large sum of cash, a hidden compartment where the cash was located in a vehicle, and the alert of narcotics by a K–9 were sufficient to deny claimant's motion to dismiss).

In addition, while a canine alert may not be sufficient standing alone, many courts (including the Sixth Circuit) have nonetheless found that canine alerts to the presence of narcotics may contribute to a finding that forfeiture was warranted under certain circumstances. *See, e.g., $118,170.00*, 69 Fed. Appx. at 717 (finding probable cause based on alert by drug dog, large amount of money found in truck, and presence of marijuana); *United States v. $110,873.00,* 159 Fed. Appx.

649, 652 (6th Cir. 2005) (finding probable cause to seize currency based on alert by drug dog, "unusual amount of currency" found in vehicle, and small amount of marijuana). *See also $82,300*, 2019 WL 1112390 at * 5 (denying motion to dismiss where trained narcotics canine alerted to the claimant's suitcase and currency, large amount of currency was seized, and claimant could not provide any detailed information about his travel plans); *$6,000*, 2012 WL 2357062 at * 3 (denying motion to dismiss where government's allegations included a K-9 unit's positive alert for narcotics, the location of large quantities of cash and 15 grams of marijuana, an individual's prior drug-related arrests, the odor of marijuana in the hotel and a vehicle, and "the hidden nature of the money."); *$335,260.00*, 2010 WL 1416919 at * 2-3 (denying motion to dismiss where government alleged that, during an airport search, DEA agents found two vacuum-sealed bags filled with $335,260.00 in cash, a canine alerted to narcotics on the currency, and the claimant made misleading statements to DEA officers); *$16,000*, 2009 WL 1048524 at * 3-4 (denying motion to dismiss where drug dog alerted to the currency, vehicle smelled of marijuana, and currency was in predominantly small bills). *See also Mondragon*, 313 F.3d at 866 (rejecting argument that dog sniff had "no value because a high percentage of U.S. paper currency is contained with drug residue" and finding that "the nature of the dog's alert, *coupled with the rest of the circumstances*, supported a reasonable belief that drugs had been transported in the car, probably in the secret compartment, and that the currency found in the compartment was linked to drug trafficking.") (emphasis in original).

Finally, the Court rejects Shaw's argument that the allegedly suspicious text messages, contacts with known felons, and photographs of marijuana plants found in the seized cell phones should not be accorded any weight because the Government failed to provide any context for and/or further information regarding the same. As noted above, "'the Government is not required to allege

10

in the complaint all of the facts and evidence at its disposal.'" *$506,069.09*, 664 Fed. Appx. at 434 (quoting *$22,173.00 in United States Currency*, 716 F.Supp.2d at 248). Rather, "[i]t is sufficient for the Government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation.'" *Id. See also $82,300*, 2019 WL 1112390 at * 4 (noting that "courts have interpreted Rule G(8)'s provision to mean that the government's forfeiture claim may advance in the face of a motion to dismiss . . . 'even if the Government's complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding'").

Here, the Government has plead sufficient facts to allow Shaw to understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation. Indeed, Shaw does not seem to strongly contest as much but, rather, appears to prematurely seek summary judgment based on the quality and strength of the evidence to date. At this stage in the proceedings, however, that is not the appropriate standard. Viewing the government's allegations at the pleading stage and in the aggregate, the Court finds, for all the reasons set forth above, that the Government has pled sufficient facts to support a reasonable belief that it will be able to meet its burden of proof at trial.

Accordingly, Shaw's Motion to Dismiss is denied.

### IV. Conclusion

For all the reasons set forth above, Shaw's Motion to Dismiss (Doc. No. 4) is DENIED.

**IT IS SO ORDERED.**

Date: April 14, 2022

   s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE